CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 29 2011

JULIA D. DUDLEY, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HAROLD LEE, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:10-cv-247 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GENE JOHNSON, et al., ) | By: Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendants. ) | |

Harold Lee, proceeding pro se, filed this action asserting claims under 42 U.S.C. § 1983 against several defendants who allegedly deprived him of the right to free exercise of his House of Yahweh religious beliefs during his incarceration at Pocahontas State Correctional Center ("PSCC"), in violation of his First Amendment rights and of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc to 2000cc-5. The case is now before the court on two motions: (1) Lee's motion to amend his complaint to adequately allege that the defendant Chaplain Kevin Richardson is a state actor for purposes of § 1983; and (2) the remaining defendants' motion for summary judgment. For the reasons that follow, Lee's motion will be granted, but the claims against Richardson will nevertheless be dismissed. The remaining defendants' motion for summary judgment will be granted.

## Background

The facts underlying this suit have been described previously by this court. See Docket No. 12 at 1-2. In short, Lee adheres to the teachings of the House of Yahweh, a religious organization whose adherents believe it necessary to abide by the Torah. According to Lee, House of Yahweh adherents must "congregate with other members and perform ritual [ablution or baptism], keep annual festivals of the Old Testament, including the assembling of members,

once a year on the evening before Passover, to hold a solemn observance of Yashua's Memorial."

When Lee arrived at PSCC on January 6, 2009, he contacted Chaplain Richardson to inquire about the possibility of House of Yahweh services being held at PSCC but was told that PSCC had not approved group meetings for House of Yahweh adherents and that a minimum of five inmates was required to institute religious services for a given faith group. At that point, Lee was the only inmate who had expressed interest in House of Yahweh group services.

Lee then asked why Chaplain Richardson had posted a sign-up sheet advertising Catholic services but had not posted any such sheet on which House of Yahweh members could indicate their interest in group services. Chaplain Richardson explained that the memo seeking additional attendees for Catholic services had been posted only after fifteen inmates had already expressed interest in partaking in such meetings. Finally, when Lee asked Chaplain Richardson for religious materials pertaining to the House of Yahweh, the chaplain replied that he did not have any such materials and therefore could not provide them to Lee.

After filing internal grievances and an informal complaint, Lee filed this action on June 9, 2010, asserting several claims against Chaplain Richardson and PSCC officials which the court construed as proceeding under 42 U.S.C. § 1983 and RLUIPA. By memorandum opinion and order dated September 17, 2010, the court summarily dismissed each of Lee's claims against Chaplain Richardson on the basis that Lee had insufficiently shown that Chaplain Richardson was a state actor for purposes of § 1983.[1] Several of the remaining claims were permitted to

---

[1] The court also dismissed a § 1983 claim against defendants Johnson, Jabe, and Young for failure to train Chaplain Richardson, given that there was no showing of responsibility on the part of state officials to train a non-state employee. To the extent that this claim is resuscitated by the court's ruling on Lee's motion to amend, it must nonetheless be dismissed as seeking relief from individuals entitled to qualified immunity. See 28 U.S.C. § 1915(e)(2); Part II, infra.

2

proceed against the remaining defendants. Lee subsequently filed a motion to amend his complaint to rename Chaplain Richardson as a defendant. This motion was denied on November 2, 2010 because the plaintiff's allegations continued to fail to demonstrate that the chaplain acted under color of state law.

On December 7, 2010, Hammond, Jabe, Johnson, and Young (the "served defendants") filed a motion for summary judgment. Lee requested an extension of time to file a response brief, which the court granted, eventually giving him until April 1, 2011 to do so. Lee filed one response brief on December 28, 2010 but did not supplement it in any way before the April 1 deadline. On March 7, 2011, Lee filed another motion to amend his complaint to state Chaplain Richardson as a defendant. (Docket No. 55.)

Meanwhile, on January 12, 2011, Lee filed a motion for a preliminary injunction and a temporary restraining order for events not alleged in his complaint. The court denied this motion the next day by written opinion, and Lee appealed this decision to the United States Court of Appeals for the Fourth Circuit, which likewise denied his claim. (Docket No. 57.) During the pendency of his appeal, Lee was transferred from PSCC to Powhatan Correctional Center, located in State Farm, Virginia.

Given the termination of Lee's interlocutory appeal, and given the fact that the matter has been fully briefed by the parties, both Lee's renewed motion to amend and the served defendants' pending motion for summary judgment are ripe for determination.

## Discussion

Because Lee is proceeding pro se, his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The

3

requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). Moreover, "judges are not . . . required to construct a [pro se] party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993). Likewise, the court is not required to "attempt[] to divine the point" the litigant seeks to make about the specific facet of the proceedings that he challenges. Id.

## I. Lee's Renewed Motion to Amend His Complaint

Lee's renewed motion to amend asserts that Chaplain Richardson is a state actor and therefore requests that his original complaint be permitted to go forward. Although the court remains skeptical that Chaplain Richardson is subject to suit under § 1983 or RLUIPA, Lee's motion will be granted. Compare Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 927 (9th Cir. 2011) (prison chaplain who refused to consider plaintiff as Jewish was not a state actor), Montano v. Hedgepeth, 120 F.3d 844 (8th Cir. 1997) (prison chaplain who refused for religious reasons to allow plaintiff to worship with a group for Protestant prisoners was not a state actor for purposes of § 1983 despite being a state employee), McGlothlin v. Murray, 993 F. Supp. 389, 408 (W.D. Va. 1997) (Michael, J.) (chaplain employed by Chaplain Service of the Churches of Virginia, Inc. was not a state actor for purposes of § 1983), with Phelps v. Dunn, 965 F.2d 93 (6th Cir. 1992) (prison chaplain was a state actor when he refused to allow a homosexual prisoner to worship with his group despite explicit contractual provisions that he not discriminate between prisoners based on his religious beliefs), Indreland v. Yellowstone County Bd. of Comm'rs, 693 F. Supp. 2d 1230, 1244-45 (D. Mont. 2010).

Despite having granted Lee the benefit of the doubt on this matter, however, the court can

4

only conclude that Lee has failed to state a claim upon which relief may be granted with respect to Chaplain Richardson's alleged conduct, necessitating the dismissal under 28 U.S.C. § 1915(e)(2) of all claims brought against him. Read liberally, Lee's complaint alleges three claims against Chaplain Richardson: (1) that he failed to provide Lee with religious materials regarding the House of Yahweh as requested; (2) that he violated the Equal Protection Clause by posting a memo advertising Catholic religious services on a common bulletin board but refusing to provide the same accommodation for Lee to help him identify other inmates sharing his religious belief; and (3) that he failed to provide Lee with an opportunity to assemble with other inmates known to be of the same religious faith, in violation of Lee's right to free exercise of his religious beliefs under the First Amendment and RLUIPA.

Each of these claims must be dismissed under § 1915(e)(2). As an initial matter, the court observes that Lee's claims for injunctive relief are rendered moot by his transfer from PSCC to a different correctional center. Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009). Second, even assuming that Chaplain Richardson is a state actor, RLUIPA does not entitle Lee to monetary damages against state actors. Sossamon v. Texas, 131 S. Ct. 1651, 1663 (2011). Thus, the claims urged by Lee are viable only to the extent that they seek monetary damages under § 1983.[2]

### A. Provision of Religious Materials

Against this background, Lee's first claim is notable for what it does not allege. Lee does not complain that Chaplain Richardson restricted Lee's ability to use or access religious materials with which Lee would have supplied himself; he simply takes Chaplain Richardson to task for

---

[2] Each of the served defendants has also asserted the defense of qualified immunity. (Answer at 2.)

failing to affirmatively procure House of Yahweh materials for Lee upon Lee's request. Compare Dettmer v. Landon, 799 F.2d 929, 933 (4th Cir. 1986) (prisoner sought permission to use religious materials with which he would have supplied himself). Unfortunately for Lee, "[t]here cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, [religious] materials cannot be denied to prisoners if someone offers to supply them." Cruz v. Beto, 405 U.S. 319, 323 (1972) (Burger, C.J., concurring). In short, while Lee has a constitutional right to be free of certain state restrictions upon his religious activities, nothing in the Constitution compels the state to affirmatively aid him in his spiritual journey. Cf. Florer, 639 F.3d at 923-24. Because the facts alleged by Lee with respect to this claim do not implicate any constitutional right, the claim must be dismissed.

B. Equal Protection Claim

Lee's second claim—that Chaplain Richardson violated the Equal Protection Clause when he posted a sign-up sheet for inmates interested in Catholic services but not for those interested in House of Yahweh services—must likewise fail for want of remedy. 28 U.S.C. § 1915(e)(2). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Moreover, because of the heightened deference due to administrators in the prison context, a prison administrator's conduct that impinges upon an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests and is not an exaggerated response to a particular concern, even where the constitutional

right allegedly infringed would otherwise warrant strict scrutiny review. Id. at 654-55.

With respect to this equal protection claim, the court is somewhat sympathetic to Lee's plight as he currently presents it. Nevertheless, the court concludes that an award of monetary damages under § 1983—the only form of relief left to Lee on this claim—would without doubt be stymied by Chaplain Richardson's assertion of qualified immunity with respect to it. "Although qualified immunity is an affirmative defense, no principle forbids a court to notice that such a defense exists, is bound to be raised, and is certain to succeed when raised." Buckley v. Fitzsimmons, 20 F.3d 789, 793 (7th Cir. 1994); Moore v. Thomas, 653 F. Supp. 2d 984, 1003 (N.D. Cal. 2009). See also 28 U.S.C. § 1915(e)(2)(iii) (providing that the court may dismiss claims that seek monetary relief against defendants who are immune from such relief). Under the doctrine of qualified immunity, a state actor is shielded from civil damages even where he has violated a plaintiff's constitutional right unless the right that was violated was clearly established at the time of the incident. Cloaninger v. McDevitt, 555 F.3d 324, 330-31 (4th Cir. 2009).

It is beyond dispute that, even if Chaplain Richardson's conduct violated Lee's constitutional rights, such violation was not "apparent" to Chaplain Richardson at the time of his actions. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Lee has recounted Chaplain Richardson's explanation that he never posted a signup sheet for any particular religious group unless at least ten or fifteen inmates had previously expressed interest in joining group services of that religion. The court has located no authority establishing that Chaplain Richardson's policy of deferring his memo-posting until receiving a critical mass of interested inmates violates the Equal Protection Clause. Nor is it reasonable to tax Chaplain Richardson with coming to such a conclusion on his own, especially given the deference generally due to prison officials'

7

administrative decisions. See Morrison, 239 F.3d at 654-55. The law does not expect a state actor "to sort out conflicting decisions or to resolve subtle or open issues." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). Neither will this court expect Chaplain Richardson—even assuming that he was acting in an official government capacity—to have parsed the standards of appropriate conduct governing his display of signup sheets for inmates. Accordingly, Lee's equal protection claim must be dismissed. 28 U.S.C. § 1915(e)(2); Morrison, 239 F.3d at 654.[3]

### C. Free Exercise Claim

Finally, the free exercise claim asserted against Chaplain Richardson must meet a similar end. As explained in more detail in Part II, infra, it is without merit. See Cruz, 405 U.S. at 322 n. 2 ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand."). Each of the claims asserted against Chaplain Richardson must therefore be dismissed. 28 U.S.C. § 1915(e)(2).

## II. The Served Defendants' Motion for Summary Judgment

An award of summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a

---

[3] To the extent that Lee challenges the application of the five-inmate rule against him instead of against other groups, he has not refuted the defendants' indication that the five-inmate rule has been enforced against at least six other religious groups' services at PSCC, including Nation of Islam, Rastafarian, Messianic Jew, Native American, Santerian, and Wiccan services. (Docket No. 33-1 at 3.)

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a party's evidence to raise a "genuine" issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Id. In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show that there is more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, to forestall summary judgment, the nonmoving party must set forth "specific facts" amounting to more than a "mere . . . scintilla of evidence." Anderson, 477 U.S. at 248, 252. Nor can the nonmoving party "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita, 475 U.S. at 587. On the other hand, if reasonable minds could differ as to the import of the evidence, summary judgment must be denied. Anderson, 477 U.S. at 250.

Given the court's determination that each of the claims against Chaplain Richardson must be dismissed, only the following claims remain against the served defendants: (1) that Stanley Young, PSCC Warden, failed to provide plaintiff with an opportunity to assemble with other

inmates known to be of the same religious faith, in violation of plaintiff's right to free exercise of his religious beliefs under the First Amendment and RLUIPA; (2) that Gene Johnson, VDOC Director, and John Jabe, Deputy Director of Operations, failed to ensure that plaintiff could assemble to worship with other members of the House of Yahweh at PSCC, in violation of the First Amendment and RLUIPA; and (3) that Johnson, Jabe, Young, and David Hammond, Treatment Programs Supervisor at PSCC, deprived Lee of the ability to practice other aspects of his religious beliefs, including the observation of Yashua's Memorial, the practice of ritual ablution, and the practice of wearing religious garments for worship services and private prayers.

A. Claims (1) and (2)

The first two of these claims revolve around the same alleged violation of the Free Exercise Clause. Lee essentially argues that PSCC's policy that allows for group worship only if a minimum of five inmates express interest in such services (the "five-inmate rule") violates his rights under the Free Exercise Clause because his religion requires certain rituals to be performed in communion with fellow House of Yahweh adherents.

As construed by the court, Lee's claims proceed under both § 1983 and RLUIPA. Section 1983 provides for civil liability against state actors who cause or participate in a violation of a plaintiff's rights secured by the constitution or federal law. West v. Atkins, 487 U.S. 42, 49 (1988). The First Amendment's Free Exercise Clause guarantees every individual, including inmates, the right to freely exercise his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Nevertheless, "even assuming that analogous action outside the prison context would violate the Constitution, 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" In re Long Term

10

Administrative Segregration of Inmates Designated as Five Percenters, 174 F.3d 464, 468 (4th Cir. 1999) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). As a result, if prison officials demonstrate that a challenged policy "is pursuing a legitimate governmental objective, and demonstrates some minimally rational relationship between that objective and the means chosen to achieve that objective, we must approve of those means." Hines v. South Carolina Dept. of Corrections, 148 F.3d 353, 358 (4th Cir. 1998). See also Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). Several factors are relevant to this reasonableness determination, including whether there is a logical connection between the asserted interest and the challenged policy, whether accommodating the inmate's rights would severely impact allocation of prison resources, and whether inmates retain alternative means of exercising their religious rights. Hines, 148 F.3d at 358.

Here, the defendants have represented that their adherence to Operating Procedure 841.3's five-inmate rule is motivated by their concern with maintaining prison order and security. Noting that each religious gathering of inmates must be supervised by a staff member, see Docket No. 25-4 at 12, Young claims that he has refused to make exceptions to the five-inmate rule because permitting meetings for each group of only two or three inmates would exceed the capacity of his available staff and space resources, thereby implicating concerns of institutional security. (Docket No. 25-3 at ¶ 5.)

On these facts, the court can only conclude that there is, at least, a minimally rational relationship between the security objectives asserted by the defendants and the five-inmate rule as implemented in this case. First, there is a "logical connection" between the five-inmate rule and the security interests invoked by the defendants to justify it. Hines, 148 F.3d at 358. As a

general matter, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Five Percenters, 174 F.3d at 469. Although the defendants' brief is thin on descriptions of the overall resources available at PSCC, there is no question that a logical link exists between the prospect of multiple, improperly-accommodated, incompletely-supervised, inmate gatherings and amplified security vexations. For related reasons, dispensing with the five-inmate rule would significantly impact the allocation of PSCC resources, demanding that every request for a religious meeting be granted—and thereby supervised and given a meeting area—regardless of the group's size. Hines, 148 F.3d at 358.

Finally, the five-inmate rule, while limiting aspects of his religious activity, still affords Lee "alternative means of exercising [his] religious rights." Hines, 148 F.3d at 358. In Five Percenters, the Court upheld a challenged policy where inmates remained free to pray, fast, and study religious materials on an individual basis despite being prohibited to gather and participate in communal religious services. 174 F.3d at 469-70. The Court specifically noted that, "[a]lthough the inmates are unable to participate in group meetings, they are not 'deprived of all means of expression.'" Id. at 470 (quoting O'Lone, 482 U.S. at 352). Here, as in Five Percenters, Lee is entirely free to study religious materials and otherwise practice his religion and its rites on an individual basis. Id. In fact, this case presents facts much less constrictive than those in Five Percenters, given that nothing precludes Lee's ability to engage in House of Yahweh group meetings should four other inmates express interest to PSCC officials in holding them. The fact that Lee has identified four other inmates who would be interested in attending such meetings

12

says nothing about PSCC's willingness to accommodate his requests for religious gatherings, given that Lee has not submitted evidence that all four of them alerted prison officials—rather than simply Lee—to their desire. See Docket No. 31-2; Childs v. Duckworth, 705 F.2d 915, 921 (7th Cir. 1983) (request to attend religious service may be denied when only one prisoner requests services for particular religion); Garza v. Miller, 688 F.2d 480, 486-87 (7th Cir. 1982) (provision of religious services only upon request to small number of inmates of particular faith did not violate First Amendment).

If PSCC officials had denied requests for religious gatherings by House of Yahweh members after at least five adherents had expressed interest in such gatherings to prison officials (rather than simply to each other), Lee may have firmer footing for his claim. But at this point, Lee has neither alleged nor demonstrated that this is the case. Moreover, each of the served defendants has asserted the defense of qualified immunity. (Answer at 2.) As the court's foregoing analysis has shown, it is clearly not the case that any constitutional violation suffered by Lee was so clearly-established that the served defendants should have known that their conduct was illegal. Anderson, 483 U.S. at 640. Accordingly, because prison officials are not constitutionally required to provide religious accommodations "for every faith regardless of size" or "without regard to the extent of the demand," Lee's claims under § 1983 must be dismissed. Cruz, 405 U.S. at 322 n. 2.

To the extent that RLUIPA still obtains in this case,[4] it offers no recourse to Lee on his claims, either. RLUIPA provides that no government may impose a substantial burden on the religious exercise of an institutionalized person unless the government demonstrates that the

---

[4] See supra, note 2 and accompanying text.

13

burden is "(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). "Government" includes any official of "a State ... or other governmental entity created under the authority of a State" and "any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A).

On the facts of this case, the court is constrained to conclude that the five-inmate rule does not impose a substantial burden on Lee's exercise of his religious beliefs. A given policy imposes a substantial burden on religious exercise if it "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" Lovelace, 472 F.3d at 187 (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), and Sherbert v. Verner, 374 U.S. 398, 404 (1963)). On this issue, Lee's circumstances are distinguishable from cases such as Smith v. Ozmint, 578 F.3d 246 (4th Cir. 2009), where inmates have met with some success challenging requirements that they alter their dress or personal grooming in direct conflict with specific tenets of their religion on these matters. Here, Lee claims not that the five-inmate rule has forced him to affirmatively engage in conduct that violates a religious duty, but that it simply fails to accommodate his desire to express his beliefs together with co-religionists.[5] Of course, the defendants have no obligation to provide him with

---

[5] It is not clear whether Lee's religion in some manner imposes a religious duty upon him to gather with co-religionists. But even to the extent that this is true, and that the five-inmate rule precludes this obligation, this argument is substantially weakened in the prison context, given that it is axiomatic that "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate . . . [T]he inmate's status as a prisoner and the operational realities of a prison dictate restrictions on the associational rights among inmates." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977) (quotation marks omitted).

14

"a podium from which to propagate his individual beliefs." Childs, 705 F.2d at 921.

Moreover, the five-inmate rule expressly permits Lee to gather with co-religionists if only one requirement is met: namely, that four other House of Yahweh adherents make their desire for group meetings known to PSCC officials. Essentially, this notification requirement allows a group religious service to occur so long as there is, in fact, a group. Notwithstanding Lee's protestations to the contrary, it cannot substantially burden Lee's right to gather with his co-religionists merely to require that they consent to it. Although an arbitrarily-high minimum member requirement may at some point improperly increase the burden on Lee and his fellow adherents, Lee makes no suggestion that it is at all difficult for him to find four co-religionists at PSCC. In fact, he has apparently already located four fellow House of Yahweh members—one of whom has requested group services from PSCC officials, one of whom has relied upon Lee to forward his request, and two of whom about whose requests for religious gatherings Lee has offered no evidence. (Docket No. 31-2.) All of the evidence, in other words, suggests that whatever burden exists as to Lee's exercise of his religion is insubstantial. Cf. Lovelace, 472 F.3d at 187.

Lee has neither alleged nor demonstrated that five inmates expressed their interest in House of Yahweh group gatherings to PSCC personnel but that the defendants nevertheless denied his requests for group gatherings. Again, to the extent that Lee's difficulty is engendered by his co-religionists' hesitation to request group gatherings from PSCC officials, this hurdle to Lee's participation in group religious services is not attributable to the defendants. Lee's religious fervor may be commendable; but the law can hardly fault prison administrators simply because Lee's fellow inmates do not share his zeal. Because, on these facts, the court cannot

deem the five-inmate rule to be a substantial burden on his free exercise rights, summary judgment must be entered on Lee's free exercise claims. Id.

B.  Claim (3)

The court previously construed Lee's final claim as alleging that several of the defendants deprived Lee of the ability to practice other aspects of his religious beliefs, including the observation of Yashua's Memorial, the practice of ritual ablution, and the practice of wearing religious garments for worship services and private prayers. Warden Young has stated that institutional policies permit inmates to possess certain religious property and garments, but that Lee never requested permission at any time to wear particular religious garb for worship services or prayers. (Docket No. 25-3 at 3.) The defendants also assert that Lee is free to engage in any type of religious practice or rituals within his cell. Lee does not argue this claim in his opposition to the defendants' summary judgment motion, and the court therefore deems it conceded.[6]

**Conclusion**

For these reasons, the motion for summary judgment filed by the defendants will be granted.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the

---

[6]To the extent that Lee contends he was barred from observing certain communal rituals, those arguments have been addressed in Part II(A), supra.

16

accompanying order to the plaintiff and to all counsel of record.

ENTER: This 28th day of June, 2011.

／s／ Glen Conrad
Chief United States District Judge